IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. No. 04-00363 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT |
| | ) | DANIEL LYNN MYERS'S MOTION TO |
| vs. | ) | SUPPRESS |
| | ) | |
| DANIEL LYNN MYERS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT DANIEL LYNN MYERS'S MOTION TO SUPPRESS

I.      INTRODUCTION.

Defendant Daniel Lynn Myers seeks suppression of all property seized during a search of his residence, vehicles, and person on June 30, 2004, pursuant to a search warrant issued by the Honorable Richard Keller, Judge of the Superior Court, Alameda County, California.  Myers argues that the seized property should be suppressed because probable cause did not support the search warrant and the good faith exception does not apply in this case.  Because the court concludes that probable cause supported the warrant application, the court denies Myers's motion to suppress.

II.     LEGAL STANDARD.

This court gives "great deference" to the state judge's determination of probable cause and does not reverse such a determination unless it is clearly erroneous.  See United States v. Alvarez, 358 F.3d 1194, 1203 (9th Cir. 2004); United States v. Dozier, 844 F.2d 701, 706 (9th Cir. 1988).

III.     BACKGROUND FACTS.

This motion concerns a warrant obtained on June 30, 2004, by Fremont Police Department Detective Derek M. Burns ("Detective Burns") to search Myers's residence, vehicles, and person. See Ex. A, attached to motion. Detective Burns's affidavit was attached to the search warrant. See id.

Detective Burns's affidavit detailed his experience as a police officer, his completion of over 900 hours of formal training, and his involvement with prior search warrants. Ex. A at 5. Detective Burns said he was familiar with the kinds of drug-related evidence commonly maintained by drug traffickers. Ex. A at 7-9. Detective Burns also stated, based on his training and experience, that drug traffickers commonly stored their drug inventory and related paraphernalia on their persons or in their vehicles and residences. Id.

The affidavit also relied on information Detective Burns obtained from a confidential informant within ten days of the issuance of the search warrant. Ex. A at 6. Detective Burns did not disclose the identity of the informant in the affidavit out of concern that the informant would be subjected to death, injury, or retaliation. Id. Additionally, Detective Burns said he believed that identifying the informant would hamper the investigation in this case, as well as other police investigations. Id.

Detective Burns stated that he believed that the informant was reliable because the informant had previously provided information leading to the seizure of methamphetamine, marijuana, cocaine, and psilocybin, and to the arrest of at least ten individuals.  Id.  Detective Burns said that the informant had never given him false information and that the informant wanted to provide information in this case in the hope that it would benefit the informant in his or her own pending criminal case.  Id.  Burns also stated that the informant knew that false information would result in no benefit to the informant.  Id.

Detective Burns's affidavit summarized statements made by the informant.  Id.  Detective Burns stated that the informant claimed to be knowledgeable about cocaine and marijuana and to have purchased and consumed cocaine and marijuana in the past.  Id.  The informant was also described as having told Detective Burns about a white adult male by the name of "Danny Myers," who was about 42 years old, five feet ten inches tall, and 190 pounds.  Id.  The informant also told Detective Burns that, within ten days of the interview, the informant had been at Danny Myers's home on Southwood Drive in Fremont, California.  Id.  Although the informant did not know Danny Myers's address, the informant offered to take Detective Burns to the house.  Id.

According to the affidavit, the informant told Detective Burns about seeing Danny Myers with cocaine and

marijuana at Danny Myers's residence.  Id.  The informant did not disclose the amount of cocaine and marijuana Myers possessed, but stated that the amount indicated an intent to sell the drugs. Id.

After meeting with the informant, Detective Burns drove the informant to Southwood Drive in Fremont.  The informant identified the residence located at 37515 Southwood Drive as Danny Myers's residence.  Ex. A at 7.

Detective Burns verified that Myers lived at 37515 Southwood Drive by searching Fremont Police Records.  Id.  The records indicated that, as of March 10, 2004, Myers lived at that address.  Id.  Detective Burns also said that Myers's driver's license and Department of Motor Vehicles ("DMV") registration confirmed that Myers lived at the house on Southwood Drive.  Id.

Detective Burns also obtained a DMV photograph of Myers, which he showed to the informant.  Id.  The informant identified Myers as "Danny Myers" and as the person in possession of cocaine and marijuana at the house on Southwood Drive.  Id.

On June 30, 2004, Judge Keller issued the search warrant, which authorized the search of Myers's residence, any vehicle owned by, at the residence of, or under the control of Myers, and Myers's person for items listed in the attached Appendices A and B.  Ex. A at 2.  The appendices allowed for the search and seizure of marijuana and cocaine, related

paraphernalia and sales records, communication devices, firearms, computers, and money.  Ex. A at 3-4.

The search warrant was executed on June 30, 2004, by the Southern Alameda County Narcotics Enforcement Team ("Team"). The Team seized methamphetamine, cocaine, marijuana, a rifle, a handgun, a digital scale, packaging materials, and $2,772.00 in U.S. currency.

IV.   ANALYSIS.

A.   Probable Cause.

Myers argues that the search warrant is invalid because it was not supported by probable cause.  Myers contends that the affidavit "rests entirely on the hearsay statement by the [informant] that he saw cocaine and marijuana."  Motion at 10. Myers also challenges the affidavit as not specifying the date on which the informant observed Myers in possession of narcotics. Motion at 10.  Because Judge Keller had a sufficient basis for finding probable cause to issue the search warrant, the court upholds the validity of the warrant.

In issuing a search warrant, a judge must look to the "totality of the circumstances" to determine whether the supporting affidavit establishes probable cause.  Alvarez, 358 F.3d at 1203.  The judge should consider an informant's veracity, reliability, and basis of knowledge to resolve the "common-sense, practical question whether there is 'probable cause' to believe

that contraband or evidence is located in a particular place."
Illinois v. Gates, 462 U.S. 213, 230 (1983); see also Alvarez,
358 F.3d at 1203.  The judge is entitled to draw reasonable
inferences about where evidence is likely to be kept, based on
the nature of the evidence and the type of offense.  United
States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986).  The
judge is also entitled to rely on the training and experience of
law enforcement officers.  United States v. Gil, 58 F.3d 1414,
1418 (9th Cir. 1995).

        1.   Reliability of the Informant's Statements.

Myers contends that probable cause did not support the
search warrant because the affidavit relied on a confidential
informant's uncorroborated statements.  Motion at 10.  Because
the informant made statements against his or her penal interest,
the informant had previously provided reliable information in
police investigations, and independent investigation corroborated
some of the informant's statements, the court concludes that
Judge Keller had a reasonable basis for deeming the informant's
statements reliable.

In determining whether Judge Keller had a sufficient
indication of the informant's reliability, this court evaluates
the material before Judge Keller under the totality of the
circumstances test.  See Dozier, 844 F.2d at 706 ("We must

evaluate the statements made by [the informant] under the totality of the circumstances test."). The Ninth Circuit says:

> The totality of the circumstances approach "permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability)" surrounding informants' tips. Even if the reliability of a confidential source is not clearly established, the credibility of the statement is "enhanced" when the statement gives a detailed account of events that is corroborated[.]

Alvarez, 358 F.3d at 1203 (citations omitted); see also United States v. Martinez-Garcia, 397 F.3d 1205, 1216 (9th Cir. 2004) ("we examine whether the informant's information was bolstered by independent police investigation of the tip or corroboration by other confidential informants"). Statements made against an informant's own penal interests are "sufficiently credible to support a finding of probable cause to search." Dozier, 844 F.2d at 706-07 (citations omitted). The court also considers an informant's "history of providing reliable information in previous investigations and any prior criminal convictions for crimes of dishonesty." Martinez-Garcia, 397 F.3d at 1216. Additionally, "hearsay may be used to establish probable cause." United States v. Clark, 31 F.3d 831, 834 (9th Cir. 1993).

The informant's statement that he or she had previously purchased and consumed cocaine and marijuana was made against the informant's penal interest. See Dozier, 844 at 706. Moreover, Detective Burns's affidavit stated that the informant had

7

previously provided information leading to the seizure of drugs, including cocaine and marijuana, and the arrest of at least ten individuals. Ex. A at 6. Detective Burns said that the informant had never given him information deemed to be false and that the informant knew that he or she would not be given consideration for false information. Id. There is no evidence that the informant had prior convictions for crimes of dishonesty.

Furthermore, information provided by the informant was corroborated by independent police investigation. For example, the informant described Danny Myers as a white male approximately 42 years old. Id. Detective Burns searched the Fremont Police Records, which revealed that Myers's date of birth was June 9, 1959, and that Myers was 45 years old at the time. Ex. A at 7. Furthermore, during the interview, the informant offered to take Detective Burns to the house that he or she believed was Danny Myers's residence. Ex. A at 6. Within ten days of the interview, the informant went with Detective Burns to Southwood Drive and pointed out Danny Myers's house. Id. Detective Burns reviewed Myers's driver's license, DMV vehicle registration, and police records to verify that the house the informant pointed to was Myers's residence. Ex. A at 7. Because the informant made a statement against his or her penal interest and had previously provided reliable information in other criminal cases, and

because independent police investigation corroborated the statements, Judge Keller was justified in deciding that the totality of the circumstances indicates that the informant's statements were reliable.

        2.    Nexus Between Alleged Criminal Activity and Myers's Residence.

Myers appears to contend that the affidavit lacked probable cause for a factfinder to believe that evidence of drug distribution would be found at Myers's residence. Motion at 10. Myers states that "there was no independent verification that [Myers] was at the residence and that the [informant] did in fact enter the residence." Motion at 10. The court concludes that the affidavit provided a sufficient basis to believe evidence would be found at Myers's residence.

"[A] warrant's validity is dependent on a showing that evidence probably will be found at the locations searched." Gil, 58 F.3d at 1418. "[T]he facts submitted to the [judge] must provide a substantial basis for the judge to conclude that the object of the search is probably on the premises to be searched." Alvarez, 358 F.3d at 1203 (citing Gates, 462 U.S. at 239; Durham v. United States, 403 F.2d 190, 193 (9th Cir. 1968)). In determining whether there is probable cause to believe that contraband or evidence is located in a particular place, the judge reviewing a warrant application should consider the informant's veracity, reliability, and basis of knowledge. Id.

(citing Gates, 462 U.S. at 230).  Further, as previously mentioned, the judge is entitled to rely on the training and experience of law enforcement officers.  See Gil, 58 F.3d at 1418 (citing United States v. Arrellano-Rios, 799 F.2d 520, 523 (9th Cir. 1986); United States v. Fouche, 776 F.2d 1398, 1403 (9th Cir. 1985)).  With respect to drug trafficking in particular, the Ninth Circuit has noted that evidence of drug distribution activities is likely to be found where drug dealers live. Angulo-Lopez, 791 F.2d at 1399.

        The affidavit before Judge Keller was based on information provided by the informant as well as Detective Burns. As previously discussed, there was evidence of the informant's reliability, and of corroboration of the informant's statements, at least in part, by independent investigation.  See Dozier, 844 F.2d at 706.  Judge Keller could also rely on information provided by Detective Burns, given his training and experience in investigating drug traffickers.  See Gil, 58 F.3d at 1418.  In combination, the informant's statement that he or she had seen Myers in possession of enough narcotics to indicate an intent to sell drugs and Detective Burns's training and experience gave Judge Keller a substantial basis for believing that Myers had been involved in drug distribution.  Judge Keller could reasonably infer, as Detective Burns believed, that, because Myers was involved in drug distribution, evidence would likely be

10

found on his person, in his vehicles, and at his residence. See Angulo-Lopez, 791 F.2d at 1399. Accordingly, the court concludes that Judge Keller had a sufficient basis to issue the warrant to search Myers's residence.

> 3. Staleness of the Informant's Information.

Myers challenges the affidavit's failure to specify the date on which the informant observed Myers in possession of narcotics. Motion at 10. Because Detective Burns's affidavit states that the informant saw Myers in possession of the narcotics within twenty days of the issuance of the search warrant, the affidavit was not based on stale facts.

Staleness must be evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought. United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991) (citing United States v. Foster, 711 F.2d 871, 878 (9th Cir. 1983)). A search warrant is not stale when "there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises." Angulo-Lopez, 791 F.2d at 1399 (quoting United States v. Gann, 732 F.2d 714, 722 (9th Cir. 1984)). "One may properly infer that equipment acquired to accomplish the crime and records of the criminal activity will be kept for some period of time." Id. (quoting United States v. Strifler, 851 F.2d 1197, 1201 (9th Cir. 1988)). Regarding drug trafficking activities in

particular, the Ninth Circuit says that probable cause may continue for several months after the last reported instance of suspect activity. Id.

Detective Burns interviewed the informant within ten days of June 30, 2004, the date on which Burns applied for the search warrant. Ex. A at 6. The informant stated that, within ten days of the interview, he or she had observed Danny Myers in possession of cocaine and marijuana. Id. Even if the informant observed Danny Myers possessing narcotics twenty days prior to the issuance of the search warrant, the informant's statements were not stale. See Angulo-Lopez, 791 F.2d at 1399 (noting that probable cause of drug trafficking activities may continue for several months after the last reported instance of suspect activity); see, e.g., Alvarez, 358 F.3d at 1204 (upholding a search warrant based on statements that the defendant had been involved in drug distribution activities three years prior).

B.  Even If the Search Warrant Were Invalid, the Good Faith Exception Would Apply.

The Government contends that, even if probable cause did not support the search warrant's issuance, the good faith exception applies in this case because "Detective Burns relied in good faith upon the state court judge's issuance of the warrant." Opp. at 10. The Government continues, "[U]nder no set of circumstances can Detective Burn's [sic] affidavit be considered 'so lacking in indicia of probable cause as to render official

12

belief in its existence entirely unreasonable.'" Opp. at 10. Myers states that "the good faith exception to the exclusionary rule does not apply if the warrant affidavit contains a false statement that was made intentionally or with reckless disregard for its truth." Motion at 9. The court, however, agrees with the Government.

In discussing the good faith exception, the Ninth Circuit explains, "Even if an affidavit lacks sufficient evidence on which to find probable cause, we may nonetheless uphold a district court's denial of a motion to suppress on the good faith exception to the exclusionary rule articulated in United States v. Leon, 468 U.S. 897." United States v. Gourde, 382 F.3d 1003, 1013 (9th Cir. 2004). In Leon, the Supreme Court concluded that, "although the exclusionary rule 'effectively deters some police misconduct and provides incentives for the law enforcement profession as a whole to conduct itself in accord with the Fourth Amendment, it cannot be expected, and should not be applied to deter objectively reasonable law enforcement activity.'" Gourde, 382 F.3d at 1013 (quoting Leon, 468 U.S. at 918-19).

Under the good faith exception, "[i]t is necessary to consider the objective reasonableness not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it." Id. (quoting Leon, 468 U.S. at 923 n.24). An officer does not "manifest objective good faith in

13

relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. (quoting Leon, 468 U.S. at 899). The good faith exception "does not extend to situations in which the officer obtains a warrant based on a 'bare bones' affidavit and then relies on good faith execution by innocent colleagues in order to sustain the warrant." United States v. Michaelian, 803 F.2d 1042, 1046 (9th Cir. 1986) (citing Leon, 468 U.S. at 923 n.24). The exception is also unavailable "where the executing officer simply could not have reasonably relied on a facially deficient warrant, where the magistrate is misled by an officer's dishonesty or reckless disregard for the truth, or where the magistrate wholly abandons his judicial role." Id. (citing Leon, 468 U.S. at 923).

As discussed above, the affidavit was based on reliable information provided by the informant and Detective Burns's independent investigation, which corroborated the informant's statements. The warrant was not facially deficient such that an executing officer would have been unreasonable in thinking that probable cause supported its issuance. See Gourde, 382 F.3d at 1013. Myers has not provided any evidence that the affidavit contained false information or that Judge Keller was misled by dishonesty or wholly abandoned his judicial role. Accordingly, the good faith exception applies in this case, and this court

14

upholds the search warrant even if it is otherwise deficient. See <u>Michaelian</u>, 803 F.2d at 1046.

V.      <u>CONCLUSION.</u>

For the foregoing reasons, Myers's motion to suppress is denied.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 12, 2006.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

**<u>United States v. Myers</u>; CR. No. 04-00363 SOM; ORDER DENYING DEFENDANT DANIEL LYNN MYERS'S MOTION TO SUPPRESS**