FLORENCE T. NAKAKUNI # 2499
United States Attorney
District of Hawaii

RONALD G. JOHNSON #4532
Assistant U.S. Attorney
Room 6100, PJKK Federal Bldg.
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Ron.Johnson@usdoj.gov

Attorneys for Respondent
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DANIEL LYNN MYERS, | ) | CV. NO. 10-00032 SOM-KSC |
| | ) | CR. NO. 04-00363 SOM |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | UNITED STATES' RESPONSE TO |
| | ) | MOTION UNDER 28 U.S.C. § 2255 |
| UNITED STATES OF AMERICA, | ) | TO VACATE, SET ASIDE OR |
| | ) | CORRECT SENTENCE BY A PERSON |
| Respondent. | ) | IN FEDERAL CUSTODY; TABLE OF |
| | ) | CONTENTS; TABLE OF |
| | ) | AUTHORITIES; EXHIBITS A-G; |
| | ) | CERTIFICATE OF SERVICE |
| | ) | |

UNITED STATES' RESPONSE TO MOTION UNDER
28 U.S.C. § 2255 TO VACATE, SET ASIDE OR
CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

## TABLE OF CONTENTS

Table of Authorities ................................................................................ iii

I.     PROCEDURAL BACKGROUND ............................................................. 1

II.    FACTUAL BACKGROUND ..................................................................... 4

       A.  Generally ...................................................................................... 4

       B.  Facts Related to Alleged Vouching ...................................................... 5

       C.  Appellate Proceedings ...................................................................... 8

III.   ARGUMENT ......................................................................................... 9

       A.  Myers' Claims that Mr. Takahashi and Ms. Kagiwada Provided
           Ineffective Assistance of Counsel Are Not Supported By the Record
           and Myers Fails to Prove Prejudice ................................................... 12

           1.  Legal Standards ...................................................................... 13

           2.  Each of Myers' Allegations of Ineffective Assistance of Counsel
               Lack Merit as Counsels' Representation was at all Times
               Reasonable ............................................................................. 14

               a.  Mr. Takahashi ................................................................. 14

                   i.    Failure to File Pre-Trial Motions ......................... 14

                   ii.   Failure to Investigate ......................................... 16

                   iii.  Failure to Object to Government's Vouching ........ 18

               b.  Ms. Kagiwada .................................................................. 19

                   i.    U.S.S.G. § 5G1.3 ............................................... 19

                   ii.   Concurrent Sentence .......................................... 23

                   iii.  Credit for Time Served ....................................... 25

                   iv.   Representation on Appeal ................................... 26

           3.  Myers Has Failed to Allege and Prove Prejudice as a Result of
               Counsels' Performance ........................................................... 27

i

B. Government Did Not Commit Misconduct During Opening Statement and Myers is Precluded From Raising this issue in the Context of 2255 ........................................................................................ 28

C. No Evidentiary Hearing is Required ................................................. 29

IV.   CONCLUSION........................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Bousley v. United States,*
   523 U.S. 614 (1988) ...................................................................... 29

*Burns v. Alcala,*
   420 U.S. 575, 95 S. Ct. 1180, 43 L. Ed. 2d 469 (1975)............... 21, 22

*Jones v. Barnes,*
   463 U.S. 745 (1983).................................................................. 11, 26

*Olney v. United States,*
   433 F.2d 161 (9th Cir. 1970) ................................................... 9, 15, 18

*Shah v. United States,*
   878 F.2d 1156 (9th Cir. 1989), <u>cert. denied</u>, 493 U.S. 869 (1989)...... 30

*Shraiar v. United States,*
   736 F.2d 817 (1st Cir. 1984)............................................................. 30

*Smith v. Robins,*
   528 U.S. 259 (2000)............................................................11, 26, 27

*Strickland v. Washington,*
   466 U.S. 668 (1984)..................... 11, 13, 14, 18, 19, 23, 24, 25, 26, 27

*United States v. Blackwell,*
   49 F.3d 1232 (7th Cir.   1995 .......................................................... 20

*United States v. Boos,*
   127 F.3d 1207 (9th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1066, 118 S.Ct.
   734, 139 L.Ed.2d 672 (1998)........................................................... 21

*United States v. Frady,*
   456 U.S. 152 (1982)..................................9, 10, 12, 15, 16, 19, 23, 29

*United States v. McMullen,*
   98 F.3d 1155 (9th Cir. 1996) .......................................................... 22

*United States v. Ogg,*
   992 F.2d 265 (10th Cir. 1993) ........................................................ 21

*United States v. Peters,*
   470 F.3d 907 (9th Cir. 2006) ........................................................... 25

*United States v. Quan,*
   789 F.2d 711 (9th Cir. 1986), <u>cert. denied</u>, 478 U.S. 1044 (1986)...... 30

*United States v. Ratigan,*
   351 F.3d 957 (9th Cir. 2003) ........................................................... 29

*United States v. Schaflander,*
   743 F.2d 714 (9th Cir. 1984) ...................................................... 29, 30

*United States v. Schlesinger,*
   49 F.3d 483 (9th Cir. 1994) ............................................................. 23

*United States v. Turnipseed,*
   159 F.3d 383 (9th Cir. 1998) ........................................................... 20

*United States v. Wilson,*
   503 U.S. 329 (1992)........................................................................ 25

## FEDERAL STATUTES

18 U.S.C. § 3584(a)............................................................................... 23

18 U.S.C. § 3585(b)............................................................................... 25

21 U.S.C. §§ 846, 841(a)(1) .................................................................... 2

28 U.S.C. § 2255 ...................................................................... 1, 2, 29

The United States of America, by its undersigned counsel, hereby responds to Daniel Lynn Myers' ("Myers") motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

## I.   PROCEDURAL BACKGROUND

On September 22, 2004, a grand jury in the District of Hawaii returned a two-count Indictment charging William Robert Clifford, Scott Stadnisky, and Sloane Tedmun Paglinawan with drug-related offenses.  On September 1, 2005, a grand jury in the District of Hawaii returned a Superseding Indictment charging Myers, along with Scott Stadnisky,[1] with one count of conspiring to distribute and possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A).  (CD 9/1/05 65).[2]  At the time the Superseding Indictment was filed, Myers was serving a state sentence in San Quentin State Penitentiary.  (PSR ¶ 3).  Pursuant to a Writ of Habeas Corpus Ad Prosequendum, Myers made his initial appearance in the District of Hawaii on October 7, 2005,

---

[1]Clifford and Paglinawan were not charged in the Superseding Indictment.

[2]The following citation forms will be used in this response: (1) "Exhibit A-F" refers to the United States' Exhibits; (2) "CD" refers to the Court's Docket associated with this case, to be referenced by date and entry number; (3) "PSR" refers to the Presentence Investigation Report and Addendum by paragraph [for example, (PSR ¶ 16)]; (4) "TR" will refer to the trial transcript by volume and page where applicable and by date and page number when there is no volume designation [for example, (TR 7 at 23) refers to volume 7 at page 3, or (TR 3/25/03 at 10) refers to the transcript of March 25, 2003 at page 10]; and (5) "Memo" refers to the Memorandum filed by Myers in support of his § 2255.

and was remanded to the custody of the United States Marshals Service. (PSR ¶ 3). On September 30, 2005, Lane Takahashi was appointed to represent Myers. (CD 9/30/05 79). Myers pled not guilty to the charge. (CD 10/7/05 83).

A jury trial commenced on January 31, 2006. (CD 1/31/06 124). On February 17, 2006, Myers was found guilty. (CD 2/17/06 135).

On October 20, 2006, Mr. Takahashi filed a Motion to Withdraw as Counsel for Myers. (CD 10/20/06 194). On October 25, 2006, Mr. Takahashi's Motion to Withdraw as Counsel was granted and Ms. Kagiwada was appointed to represent Myers. (CD 10/25/06 197).

On April 19, 2007, Myers was sentenced to a 336-month term of imprisonment and 5 years of supervised release. (CD 4/19/07 236). Judgment was entered on April 24, 2007. (CD 4/24/07 239). On May 4, 2007, Myers filed a Notice of Appeal. (CD 5/4/07 244, 250). On January 20, 2009, the Ninth Circuit Court of Appeals affirmed Myers' conviction. United States v. Stadnisky, 309 F. App'x 185 (9th Cir. 2009).

On January 15, 2010, Myers filed the instant Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion"). In his Motion, Myers claims that Mr. Takahashi and Ms. Kagiwada, his prior attorneys, provided him with ineffective assistance of counsel. Specifically, Myers claims that Mr. Takahashi, his trial counsel,

2

was ineffective because he failed to file unspecified pre-trial motions. (Motion at 5). Myers claims that Ms. Kagiwada was ineffective for failing to address U.S.S.G. § 5G1.3 at sentencing. (Motion at 8). In addition, Myers claims that the government's counsel engaged in prosecutorial misconduct during opening statement. (Motion at 6). In his Motion, Myers states that the facts supporting these issues are "presented in the trial transcripts" and will be explained further in a future filing. (Motion at 5, 6, 8).

On January 26, 2010, the Court ordered Myers to file a memorandum in support of his § 2255 petition no later than February 19, 2010. (CD 1/26/10 281). On February 22, 2010, Myers filed a Memorandum in Support of his Petition for Writ of Habeas Corpus ("Memo"). (CD 2/22/10 282). In his Memo, Myers claims that trial counsel, Mr. Takahashi, failed to interview the government's witnesses, failed to properly investigate the case, and failed to object to the government's vouching for a witness' credibility. (Memo at 2, 4). Myers also claims that his counsel at sentencing, Ms. Kagiwada, was ineffective because she failed to request that Myers' federal sentence be served concurrently with his California sentence for an offense that allegedly arose from the same facts and circumstances. (Memo at 5). But for Ms. Kagiwada's alleged ineffectiveness, Myers claims that he could have received a sentence that granted him credit for time he had already served on his state sentence. (Memo at 5). Myers' Memo

3

does not address the following claims that he raised in his Motion: (1) that Mr. Takahashi failed to file pre-trial motions; and (2) that government counsel engaged in prosecutorial misconduct during opening statement.

In order to respond to Myers' Motion and Memo, on February 24, 2010, the United States filed a motion with this Court seeking a judicial finding that, by filing the instant motion, Myers waived his attorney-client privilege with Mr. Takahashi and Ms. Kagiwada.  (CD 2/24/10 283).  On March 1, 2010, the Court filed an Order finding that Myers waived his attorney-client privilege as to the issues raised in the § 2255 motion, as well as to communications between Myers and Mr. Takahashi and Ms. Kagiwada, respectively, reasonably related to those claims.  (CD 3/1/10 284).

## II.   **FACTUAL BACKGROUND**

### A.  **Generally**

Myers and Stadnisky, both living in Northern California, acted as William Clifford's sources for methamphetamine from May 2003 to September 2004. (PSR ¶¶ 14, 22, 23; Exhibit D at 2).  Clifford, a resident of Hilo, Hawaii, met Myers in California in May 2003. (Exhibit D at 2).  Following their first meeting, they reached an agreement whereby Myers would provide Clifford with pound quantities of methamphetamine for distribution by Clifford in Hawaii. (PSR ¶ 14; Exhibit D at

2-3).  Myers' source for the methamphetamine was Stadnisky, a resident of Milpitas, California. (PSR ¶ 14; Exhibit D at 3).

On June 30, 2004, Myers' residence was searched and 336 grams of methamphetamine were seized, along with other indicia of drug trafficking.  (PSR ¶ 22; Exhibit D at 3).  Myers was arrested and, consequently, Clifford temporarily lost his mainland methamphetamine source.  (PSR ¶ 22; Exhibit D at 3).  In early August 2004, Clifford traveled to California and was introduced to Stadnisky, Myers' drug source, by Myers' former roommate.  (PSR ¶ 14-15; Exhibit D at 3).  During this trip, Stadnisky agreed to become Clifford's direct supplier of methamphetamine.  (Exhibit D at 3).  In September 2004, Clifford and Stadnisky were arrested following the interdiction of a parcel sent from Stadnisky to Clifford that contained 3 pounds of methamphetamine.  (PSR ¶ 9-19; Exhibit D at 3).

### B.  Facts Related to Alleged Vouching

At trial, Stadnisky's defense counsel, William Harrison ("Harrison"), used the bulk of his opening statement to attack the credibility of government witness William Clifford.  (Exhibit D at 6).  During his opening statement, Harrison repeatedly inferred that Clifford lied to law enforcement concerning the involvement of his client, Stadnisky, in order to get a better sentence.  (Exhibit D at 6).  Harrison explained to the jury that Clifford would lie to them to "buy his way out of jail."  (Exhibit D at 6).  Referencing Clifford, Harrison then stated:

"his buy-out-of-jail card is to put the blame on someone else. So, who becomes the fall guy?  My client, Scott Stadnisky, becomes Mr. Clifford's fall guy." (Exhibit D at 6).  When Drug Enforcement Administration Special Agent Jesse Fourmy testified, Harrison extensively cross-examined Fourmy on Clifford's activities and credibility, intimating that Clifford lied about Stadnisky in order to either avoid arrest or get a better sentence.  (Exhibit D at 6).

Following Fourmy's testimony, government counsel called Clifford as a witness.  (Exhibit D at 7).  Clifford had earlier entered a plea of guilty to conspiring to distribute methamphetamine with Stadnisky and Myers, and was awaiting sentencing.  (Exhibit D at 7).  During direct examination, Clifford was questioned about a "use immunity" letter he had entered into with the government prior his testimony.  (Exhibit D at 7).  During questioning, Clifford confirmed that he did not have a plea agreement, but that he was testifying pursuant to an "immunity letter."  (Exhibit D at 7).  The immunity letter also contained language stating that Clifford "shall at all times give complete, truthful and accurate information and testimony." (Exhibit D at 7).

During direct examination of Clifford, government counsel inquired as to whether Clifford had a use immunity letter from the government concerning his testimony.  (Exhibit D at 7). Government counsel established that Clifford was testifying

pursuant to a use immunity letter, and that he expected to receive benefits for his testimony. (Exhibit D at 7). Although government counsel did not inquire about the "truthfulness" provisions of the letter, Clifford indicated that his agreement "just states that for me to be truthful on the stand today." (Exhibit D at 7).

During cross-examination, Harrison probed into two meetings held between Clifford and government agents during trial preparation. (Exhibit D at 7). Harrison asked Clifford what he had told government agents during these meetings, and Clifford responded that he told government agents "the exact same things on how I met Scoot, exactly how I am now." (Exhibit D at 7-8).

Also during his cross-examination, Harrison asked a number of questions which clearly inferred that the government controlled whether Clifford got a "better sentence." (Exhibit D at 8). Harrison's questioning sought to establish that the government could file a downward departure motion and if it did, Clifford would automatically get a lesser sentence. (Exhibit D at 8). Harrison's questioning of Clifford implied that if government counsel was satisfied with Clifford's testimony, that it could (and would) give him a "better sentence." (Exhibit D at 8).

Also on cross-examination of Clifford, Lane Takahashi, Myers' trial counsel, questioned Clifford about his immunity letter and intimated that Clifford was testifying falsely and

7

could do so due to the benefits of his immunity letter. (Exhibit D at 8).

On redirect, government counsel sought to rehabilitate Clifford by inquiring about Clifford's "use immunity" letter. (Exhibit D at 8). Government counsel read portions of Clifford's "use immunity" letter that clearly set forth that Clifford would be sentenced by the United States district judge assigned to his case, Judge Mollway, and that she alone was responsible for sentencing him. (Exhibit D at 8-9). Clifford indicated that he was aware of that provision in his "use immunity" letter. (Exhibit D at 9).

On redirect, government counsel also referenced Harrison's questions concerning the prior trial preparation meetings, and then asked Clifford "did you describe those events as you've described them to the jury here today?" Clifford answered in the affirmative. (Exhibit D at 8).

### C. **Appellate Proceedings**

On May 4, 2007, Myers appealed his conviction and argued that the search warrant executed on June 30, 2004 was issued without probable cause, that this Court improperly denied his suppression motion, and that government counsel vouched for the truthfulness of Clifford during direct and redirect examination. (Exhibit C at 11-12). On January 20, 2009, the Ninth Circuit affirmed Myers' conviction. United States v. Stadnisky, 309 F. App'x 185 (9th Cir. 2009).

8

### III.  ARGUMENT

A federal prisoner may move to vacate, set aside, or correct a sentence imposed upon them if it "was imposed in violation of the Constitution or laws of the United States, ... the court was without jurisdiction to impose such a sentence, or ... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . . ." 28 U.S.C. § 2255.  There are however specific limitations on what type of claims a defendant can raise within their § 2255 petition.

A § 2255 petition cannot raise a claim that has already been decided by the underlying criminal judgement and the direct appeal that followed.  The Ninth Circuit stated in Olney v. United States, 433 F.2d 161, 162 (9th Cir. 1970), "Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255."

When a petitioner has not previously raised an alleged error at trial or on direct appeal, the petitioner is procedurally barred from raising the issue for the first time in a § 2255 petition, if it could have been raised earlier.  An exception to this prohibition exists when a petitioner can demonstrate both "cause" for the delay and "actual prejudice" resulting from the alleged error.  The United States Supreme Court in United States v. Frady, 456 U.S. 152, 167-68 (1982), stated:

9

> [To] obtain collateral relief based on trial
> errors to which no contemporaneous objection
> was made, a convicted defendant must show
> both (1) "cause" excusing his double
> procedural default, and (2) "actual
> prejudice" resulting from the errors of which
> he complains.

Even if petitioner is able to show "cause" for his failure to
have raised the issue presented at trial and again on direct
appeal he must show "actual prejudice."  In order for a
petitioner to show "actual prejudice," the Frady Court indicated
the Petitioner:

> [m]ust shoulder the burden of showing, not
> merely that the errors at his trial created a
> possibility of prejudice, but that they
> worked to his actual and substantial
> disadvantage, infecting his entire trial with
> error of constitutional dimensions.

456 U.S. at 170.

In the case at bar some of Myers' grounds for relief
may be deemed to have been raised unsuccessfully and decided by
the court of appeals.  Other grounds asserted by Myers were never
raised at the trial or on direct appeal and he has failed to show
"cause" and demonstrate that these claimed errors resulted in
"actual prejudice".  In an effort to create the "cause" needed to
get past the first hurdle, Myers now claims that his two
attorneys, Mr. Takahashi and Ms. Kagiwada, were ineffective.

In order for Myers to show he received ineffective
assistance of counsel, he must show that (1) his counsel's
performance was deficient, and (2) the deficient performance

10

prejudiced his defense.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  There is "a strong presumption" that counsel's conduct was reasonable and that counsel's representation did not fall below "an objective standard of reasonableness" under "prevailing professional norms."  <u>Id.</u> at 688.  "It is all to tempting for a defendant to second-guess counsel's assistance after conviction," judicial scrutiny of counsel's performance is highly deferential.  <u>Id</u>. at 689.  Even if petitioner was able to overcome the presumption of effectiveness, the petitioner must also demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. at 694.

On appeal, a defendant does not have a constitutional right "to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment decides not to present those points."  <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983).  The Supreme Court went on to note that experienced advocates realize the importance of "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  <u>Id</u>. at 751-52.

In <u>Smith v. Robins</u>, 528 U.S. 259, 288 (2000), the United States Supreme Court summarized the holding in <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983), stating, "appellate counsel who files a merits brief need not (and should not) raise every

11

nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."

Myers does not allege that he specifically directed or requested that appellate counsel make the arguments he puts forth herein.  Even assuming Myers could establish "cause" for his failure to raise the issues on appeal, because appellate counsel chose not to make the argument after being requested to do so, he fails to establish that he was actually prejudiced. See Frady, 456 U.S. at 167-168.

Myers raises two primary issues in his § 2255 Motion and Memo: (1) ineffective assistance of counsel of his trial and appellate counsel for various errors; and (2) government counsel committed prosecutorial misconduct.

> **A.   Myers' Claims that Mr. Takahashi and Ms. Kagiwada Provided Ineffective Assistance of Counsel Are Not Supported By the Record and Myers Fails to Prove Prejudice**

As mentioned above, in his § 2255 Motion, Myers claims that he was denied effective assistance of counsel because Mr. Takahashi failed to file unspecified pre-trial motions.  In his Memo, Myers does not address this claim, but instead asserts that Mr. Takahashi failed to conduct pre-trial investigation, failed to interview government witnesses, and was generally unprepared for trial.  Myers also asserts that Mr. Takahashi was ineffective for failing to object to the government's vouching for Clifford's testimony.

12

With respect to Ms. Kagiwada, Myers claims that counsel failed to address the U.S.S.G. § 5G1.3 factors at sentencing.  In his Memo, Myers claims that Ms. Kagiwada failed to request that his federal sentence be served concurrently with his California sentence because both allegedly arose from the same facts and circumstances.  Myers also claims that but for Ms. Kagiwada's ineffectiveness, he could have received a sentence that credited him for the time he had already served regarding the California case.  In the instant case, however, there is absolutely no evidence that any of counsels' representation fell below an objective standard of reasonableness under prevailing norms.

### 1.   Legal Standards

The Supreme Court, in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), set forth a two-prong test for determining whether a criminal defendant received ineffective assistance of counsel.  In order for a criminal defendant's sentence to be overturned based on ineffective assistance of counsel, the defendant must first prove that the performance of counsel, considering all the circumstances, was so deficient that he or she was not functioning as "counsel" as guaranteed under the Sixth Amendment.  Second, the defendant must prove that the deficient performance prejudiced the defendant by depriving him of a fair trial.  <u>Id</u>. at 691-92.

To show that counsel's performance fell below an objective standard of reasonableness, the defendant must identify

13

the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  Id. at 690. The court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Id.

Even if the court finds that counsels' performance was deficient, relief cannot be granted absent a showing of prejudice.  To affirmatively prove prejudice, the defendant must show that there is a reasonable probability that, but for counsel's conduct, the result of the proceeding would have been different.  Id. at 694

> ### 2. Each of Myers' Allegations of Ineffective Assistance of Counsel Lack Merit as Counsels' Representation was at all Times Reasonable and Competent

> #### a. Mr. Takahashi

Myers' claims that Mr. Takahashi, his trial counsel, was ineffective lack merit and are not supported by the record. In addition, Myers was not prejudiced by Mr. Takahashi's alleged ineffectiveness.

> ##### i. Failure to File Pre-Trial Motions

Contrary to Myers' claim, on December 6, 2005, Mr. Takahashi did file a Motion to Suppress all evidence seized

14

during a search of Myers' residence, person, and vehicles on June 30, 2004.  (CD 12/6/05 92).  On January 12, 2006, this Court denied that motion concluding that probable cause supported the search warrant application.  (CD 1/12/06 104).  The suppression issue was raised on direct appeal and this Court's ruling was affirmed by the Ninth Circuit.  United States v. Stadnisky, 309 F. App'x 185 (9th Cir.2009). Having raised the issue unsuccessfully on direct appeal; Myers cannot now seek to relitigate it as part of his § 2255 Motion.  Olney, 433 F.2d at 162.

Myers fails to specify which additional pre-trial motions Mr. Takahashi failed to file.  A true and correct copy of the Declaration of Lane Y. Takahashi is attached as Exhibit "E". As Mr. Takahashi states in his declaration, Mr. Myers did not discuss with, or request that, Mr. Takahashi file any other pre-trial motions.  (Exhibit E at ¶ 5).  Mr. Takahashi further states that he was unable to "identify any other non-frivolous issues upon which to premise additional pretrial motions."  (Exhibit E at ¶ 5).  Since Myers failed to raise this issue below or on direct appeal, the issue has been waived and he may not raise it now in the context of a § 2255 motion.  United States v. Frady, 456 U.S. at 167 (1982).  Myers does not specify what motions should have been filed, how they would have been supported by the facts of his case, and he does not detail how the outcome of the trial would have been different.  Myer cannot establish error that worked to his "actual and substantial disadvantage", such

15

that it infected his entire trial with "error of constitutional dimensions". <u>Frady</u>, 456 U.S. at 170.

### ii.  **Failure to Investigate**

In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Matylinsky v. Budge</u>, 577 F.3d 1083, 1093 (9th Cir. 2009)(quoting <u>Strickland</u>, 466 U.S. at 691).

In the instant case, Mr. Takahashi spent a significant amount of time preparing for trial, including reviewing all documents turned over in discovery with Myers, frequent consultations with Myers, and researching and drafting the December 6, 2005 Motion to Suppress Evidence. (Exhibit E at ¶¶ 4, 6-7). Mr. Takahashi states that to the best of his recollection, Mr. Myers did not press him to interview Clifford. (Exhibit E at ¶ 7). Had Mr. Myers insisted that Clifford be interviewed, Mr. Takahashi states that he would have made every effort to do so. (Exhibit E at ¶ 7). However, in his experience, cooperating witnesses rarely consent to be interviewed by defense counsel, have been well-prepared by the government and are not likely to change their "story" prior to trial. Mr. Takahashi also believed that the best strategy or tactic in cases such as these is to aggressively cross examine the cooperating witness for the first time while they are under oath. (Exhibit E at ¶ 7). It must also be noted that Clifford

16

was a represented defendant, as well as a incarcerated government cooperator.  Mr. Takahashi could not just visit him at his home or send an investigator to interview him as you would an innocent citizen who was a percipient witness to a crime.

In this case, the fact that Clifford was not interviewed prior to trial, does not amount to ineffective assistance of counsel on the part of Mr. Takahashi.  Mr. Takahashi did not recall Mr. Myers requesting that he interview Clifford.  Regardless, Mr. Takahashi states that in his experience, cooperating witnesses rarely consent to be interviewed by defense counsel and that the best strategy is try and attack the cooperating witness on cross examination.  Moreover, Mr. Takahashi states that the evidence did not support Mr. Myers' claim that Clifford's mother shipped the drugs to Hawaii.  Given the evidence recovered from Myers home his story simply was not believable.  Thus, Mr. Takahashi's reasons for not interviewing Mr. Myers are reasonable under the circumstances.

In addition, the government had independent evidence such as FedEx airbill receipts indicating both shipments from and to Myers' home, a digital scale, packaging materials, a food saver press, and a box of plastic ziplock bags, recovered from Myers' home which corroborated Clifford's testimony.  There were also cell phone records of conversations between Clifford and Myers. (PSR ¶ ¶ 22-25).

17

Given the facts of this case Mr. Takahasi's performance
was not deficient and did not prejudice Myers' defense.
Strickland, 466 U.S. 668, 687 (1984).  Myers has not overcome the
presumption of effectiveness, and has not demonstrated there is a
"reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
Id. 694.

### iii. **Failure to Object to Government's Vouching**

Mr. Takahashi, in his declaration, states that, to the
best of his recollection, the government did not engage in
inappropriate vouching.  Defense counsel challenged Clifford's
credibility on cross examination and government counsel was
permitted to rehabilitate Clifford on redirect.  Therefore, Mr.
Takahashi had no basis to object.  (Exhibit E at ¶ 9).  The Ninth
Circuit concluded as much therefore Mr. Takahashi's failure to
object was reasonable.  United States v. Stadnisky, 309 F. App'x
185, 188-89 (9th Cir. 2009).  Accordingly, Myers' claims are
unfounded.  Having raised the issue unsuccessfully on direct
appeal Myers cannot now seek to relitigate it as part of his §
2255 Motion.  Olney, 433 F.2d at 162.

To the extent that this is a new issue based upon
different facts and circumstances than those presented on direct
appeal, Myers claim is barred.  If Myers failed to raise the
issue below or on direct appeal, the issue has been waived and he

18

may not raise it now in the context of a § 2255 motion.  United States v. Frady, 456 U.S. at 167 (1982).  Myers does not specify what specifically should have been objected to, or how the objection would have been supported by the facts of his case, and he does not detail how the outcome of the trial would have been different.  Myer cannot establish error that worked to his "actual and substantial disadvantage", such that it infected his entire trial with "error of constitutional dimensions".  Frady, 456 U.S. at 170.

Given the facts of this case Mr. Takahashi's performance was not deficient and did not prejudice Myers' defense.  Strickland, 466 U.S. 668, 687 (1984).  Myers has not overcome the presumption of effectiveness, and has not demonstrated there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. 694.

**b.  Ms. Kagiwada**

**i.  U.S.S.G. § 5G1.3**

Myers, in Ground Three of his Motion, claims that Ms. Kagiwada's performance was ineffective in that she failed to address the United States Sentencing Guidelines § 5G1.3 sentencing factors.  (Motion at 8).  Myers seems to assert that he should have received a sentence from this Court to run concurrent with an undischarged term of imprisonment in California state court.  Myers provides no support for this

19

allegation in his motion and indicates that the facts to support this ground are presented in the sentencing transcript dated "Jan. 19, 2006."[3]

Myers' argument centers on the fact that he was charged on June 30, 2004 with possess/purchase narcotic/controlled substance for sale, in Alameda County Superior Court, Oakland, California.  (PSR ¶ 50).  He was convicted and sentenced for this offense on October 22, 2004.  (PSR ¶ 50).  On October 7, 2005, Myers was taken from San Quentin State Penitentiary by a Writ of Habeas Corpus Ad Prosequendum and brought to Hawaii where he was arraigned before U.S. Magistrate Judge Barry Kurren.  (PSR ¶ 3).  Myers was paroled from his state sentence on January 31, 2006, prior to this Court's imposition of sentence on April 19, 2007.  (PSR ¶ 50).

The Ninth Circuit Court of Appeals has held that U.S.S.G. § 5G1.3 is inapplicable when there is a completed state sentence, in United States v. Turnipseed, 159 F.3d 383 (9th Cir. 1998), the Court stated:

> By its terms, U.S.S.G. § 5G1.3(b) applies only to an "undischarged term of imprisonment."  Although this circuit has not defined "undischarged term of imprisonment," the Seventh and Tenth Circuits have held that the phrase does not include a completed term of incarceration.  See United States v.

---

[3]Myers was not sentenced on January 19, 2006 and the United States is unaware of any proceeding on that date relevant to the claim he now asserts.  Myers was in fact sentenced on April 19, 2007.

Blackwell, 49 F.3d 1232, 1241 (7th Cir. 1995)("Section 5G1.3 on its face does not apply to [the defendant] because, by the time of his sentencing[,] ... he had completed his term for the related conduct in [state prison] and therefore had no relevant 'undischarged term of imprisonment.'") (footnote omitted); United States v. Ogg, 992 F.2d 265, 266 (10th Cir. 1993)(holding that the phrase "undischarged term of imprisonment" did not include a completed state term of incarceration).

The Seventh and Tenth Circuits' interpretation of the phrase "undischarged term of imprisonment" is persuasive.  The term "undischarged" means "not discharged." *Webster's Third New Int'l Dictionary* 2491 (unabridged ed. 1993).  In turn, to "discharge" means (as pertinent) "to release from confinement." Id. at 644.  To interpret the phrase "undischarged term of imprisonment" to include an already-completed prison term would contradict the plain meaning of the term "undischarged."  When interpreting the Sentencing Guidelines, we should look to the plain meaning of its terms.  See United States v. Boos, 127 F.3d 1207, 1210 (9th Cir. 1997), cert. denied, 522 U.S. 1066, 118 S.Ct. 734, 139 L.Ed.2d 672 (1998) (stating that, when interpreting the Sentencing Guidelines, "we 'follow[ ] the axiom that words used in a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary.'")(quoting Burns v. Alcala, 420 U.S. 575, 580-81, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975)).

Context supports the same result.  The point of U.S.S.G. § 5G1.3(b) is to provide for the federal sentence "to run concurrently to the undischarged term of [state] imprisonment."  (Emphasis added.) If a defendant has been released from state prison after having served the term imposed, no term of imprisonment remains with which the federal sentence can "run concurrently."

> Here, defendant has completed his state
> term of imprisonment. Therefore, U.S.S.G. §
> 5G1.3 does not apply to him.

Id. at 386-87.

In the case at bar, Myers was paroled on January 31, 2006, prior to this Court's imposition of sentence on April 19, 2007.  Since Myers was not subject to an undischarged term of imprisonment for his state offense at the time he was sentenced for his federal offense, U.S.S.G. § 5G1.3 was not applicable and any claimed error in the sentence and conviction based on this argument is without merit.  Accordingly, Ms. Kagiwada was not ineffective for failing to address U.S.S.G. § 5G1.3 at sentencing.[4]  In addition, Myers never raised this issue with his counsel prior to sentencing or on direct appeal.  (Exhibit F at ¶ 5, 8).  As Ms. Kagiwada states in her declaration:

> Mr. Myers and I did not discuss U.S.S.G. §
> 5G1.3 at any time prior to his sentencing
> because this section was inapplicable.  Since
> the State of California paroled Mr. Myers on
> January 31, 2006, Mr. Myers did not have any
> "undischarged term of imprisonment" at the
> time of his April 19, 2007 sentencing.
> Therefore, the District Court could not run
> his federal sentence concurrent with any
> other term.  Accordingly, I did not raise any
> issue concerning U.S.S.G. § 5G1.3 at
> sentencing.

(Exhibit F at ¶ 5).  Moreover, since the issue was not objected to or raised on direct appeal it is waived.  United States v.

---

[4]It must also be noted that the PSR produced by a Senior Probation Officer made no mention of U.S.S.G. § 5G1.3 in its analysis of the relevant sentencing provisions.

McMullen, 98 F.3d 1155, 1157 (9th Cir. 1996); United States v. Schlesinger, 49 F.3d 483, 485 (9th Cir. 1994).

Even if he could show cause for his procedural default, Myer cannot establish error that worked to his "actual and substantial disadvantage", such that it infected his entire trial with "error of constitutional dimensions". Frady, 456 U.S. at 170. Myers' claim is without merit and he has not met his burden in this case.

Likewise, Myers has not overcome the presumption of effectiveness, and has not demonstrated there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. 668, 694 (1984).

### ii. Concurrent Sentence

Pursuant to Title 18 U.S.C. § 3584(a), "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." Myers' conviction for his possession of drugs in Alameda County Superior Court occurred on October 22, 2004, and his sentence was terminated when he was paroled on January 31, 2006. His drug possession was linked to 336.7 grams of methamphetamine recovered in a search warrant executed at his home. The Hawaii federal charges center around Myers' shipment of drugs to Hawaii from September 19, 2003 through June 16, 2004 via FedEx. The Hawaii federal charges did not include a substantive count of

23

possession of methamphetamine on June 30, 2004, the basis for the California charge.  (Exhibit G).  Therefore, these were two separate terms of imprisonment that were imposed at different times by separate sovereigns.

The conduct that provided the basis for the State of California charge, possession of methamphetamine in Alameda, California, did not impact, as relevant conduct, the sentence imposed in the instant case.  Pursuant to U.S.S.G. § 4B1.1, Myers was designated a career offender.  Myers qualified as a career offender without consideration of the June 30, 2004 arrest and October 22, 2004 conviction.  Specifically, Myers had convictions for voluntary manslaughter on November 17, 1987 and possession of/purchase of controlled substance for sale on March 13, 1996.  These convictions resulted in a criminal history category of VI.  (PSR ¶ 52).  The maximum term of imprisonment was life which resulted in a total offense level of 37 and a criminal history category VI, with a guideline range of 360 months to life.  (PSR ¶¶ 77-78).  This Court properly imposed sentence for the shipment of methamphetamine to Hawaii and the resulting Guideline range was not predicated in any way upon his prior Alameda, California conviction.

Given the facts of this case Ms. Kagwada's performance was not deficient and did not prejudice Myers' defense.  Strickland, 466 U.S. 668, 687 (1984).  Myers has not overcome the presumption of effectiveness, and has not demonstrated there is a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. 694.

### iii.   Credit for Time Served

Lastly, Myers appears to suggest that had it not been for Ms. Kagiwada's ineffectiveness, he would have received credit for time he had served on his state sentence pursuant to Title 18 U.S.C. § 3585(b).  Myers' claim is unfounded.  The district court lacks authority to compute or grant credit for time served. United States v. Peters, 470 F.3d 907, 909 (9th Cir. 2006).  The Supreme Court has held that "§ 3585(b) does not authorize a district court to compute credit for time served.  Rather, the prerogative to grant credits in the first instance rests with the Attorney General, acting through the Bureau of Prisons." United States v. Wilson, 503 U.S. 329, 334-35 (1992).  Accordingly, Ms. Kagiwada's alleged ineffectiveness would have had no bearing on whether Myers received credit for time served.  Nothing Ms. Kagiwada could have said or done would have resulted in Myers receiving credit for time served because the District Court lacked the authority to grant such credit. (Exhibit F at ¶ 6).

Given the facts of this case Ms. Kagwada's performance was not deficient and did not prejudice Myers' defense. Strickland, 466 U.S. 668, 687 (1984).  Myers has not overcome the presumption of effectiveness, and has not demonstrated there is a "reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."
Id. 694.

### iv.   Representation on Appeal

With respect to Ms. Kagiwada's representation of Myers
on appeal, a defendant does not have a constitutional right "to
compel appointed counsel to press nonfrivolous points requested
by the client, if counsel, as a matter of professional judgement
decides not to present those points." Jones v. Barnes, 463 U.S.
745, 751 (1983).  The Supreme Court in Jones went on to note that
experienced advocates realize the importance of "winnowing out
weaker arguments on appeal and focusing on one central issue if
possible, or at most on a few key issues." Id. at 751-52.

In Smith v. Robins, 528 U.S. 259, 288 (2000), the
Supreme Court summarized the holding in Jones, stating,
"appellate counsel who files a merits brief need not (and should
not) raise every nonfrivolous claim, but rather may select from
among them in order to maximize the likelihood of success on
appeal."

Ms. Kagiwada discussed the issues to be presented on
appeal with Myers.  (Exhibit F at ¶ 8).  Mr. Myers suggested
numerous appellate issues, however he did not suggest issues
regarding credit for time served or U.S.S.G. § 1.3.  Ms. Kagiwada
did discuss all potential issues with Myers before writing her
brief.  Myers suggested numerous issues but after researching and
discussing them with Myers she determined that they "lacked

26

merit." (Exhibit F at ¶ 8).  This did not amount to ineffective assistance on appeal as defined by <u>Robins</u>, 528 U.S. at 288.

### 3.   <u>Myers Has Failed to Allege and Prove Prejudice as a Result of Counsels' Performance</u>

As discussed above, all of Myers' claims with respect to Mr. Takahashi's and Ms. Kagiwada's alleged ineffectiveness lack any factual basis and counsels' performance did not fall below an objective standard of reasonableness.  Myers, therefore, cannot possibly prove that he suffered actual prejudice where his counsels' representation was objectively reasonable and effective.  Even if counsels' performance did fall below an objective standard of reasonableness, which it clearly did not, Myers has failed to prove prejudice as a result of any of his allegations of ineffectiveness.

Given the facts of this case Mr. Takahashi's and Ms. Kagwada's performance were not deficient and did not prejudice Myers' defense.  <u>Strickland</u>, 466 U.S. 668, 687 (1984).  Myers has not overcome the presumption of effectiveness, and has not demonstrated there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. 694.  Myers has not met the prejudice prong of the <u>Strickland</u> test and his claims must fail.

**B.    Government Did Not Commit Misconduct During Opening Statement and Myers is Precluded From Raising this issue in the Context of 2255**

As previously mentioned, Myers claimed, on direct appeal, that government counsel vouched for the truthfulness of Clifford's testimony during direct and redirect examination. Myers now attempts to claim that government counsel vouched for Clifford during the government's opening statement. Myers' allegation is without merit. Again, Myers does not identify, and government counsel cannot discern, where in the government's opening statement such alleged vouching occurred.

Opening statements are not evidence. See Ninth Circuit Model Criminal Jury Instruction 3.7. The trial prosecutor made that clear in his opening statement, when he stated' " Nothing I say can be used against them. What I say isn't evidence. .... My opening statement, their opening statement, this is just to give you an idea of what we believe the facts in our case are going to show." (TR 2/1/2006 at 9). The prosecutor went on to describe Will Clifford as, "an individual who is highly associated with drug trafficking, and we would never want to deceive you about the type of person he is. Will Clifford, the evidence will show, is a drug dealer. He's a convicted felon. He's a criminal, no bones about it. He's is an individual that's associated with drug trafficking on the Big Island and has been for some time." (TR 2/1/2006 at 18). He went on to note that Clifford seemed to be playing both sides of the fence, law

28

enforcement cooperator and on going drug dealer. (TR 2/1/2006 at 19). These descriptions of Clifford are not vouching, they are exactly the opposite, they cast him in a negative light and actually impugn his veracity. There was no vouching in the opening statement presented by the United States. Myers' argument here is unsupported by the record and without merit.

In addition, this is a claim Myer should have raised on direct appeal. Since he failed to do so, and he has not established cause and actual prejudice, the issue has been waived. See Bousley v. United States, 523 U.S. 614, 622 (1988)(noting that "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting Reed v. Farley, 512 U.S. 339, 354 (1994))); United States v. Frady, 456 U.S. 152, 170-71 (1982); United States v. Ratigan, 351 F.3d 957, 962 (9th Cir. 2003).

### C. No Evidentiary Hearing is Required

Section 2255 provides that a court shall hold an evidentiary hearing on a prisoner's § 2255 motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

The Ninth Circuit has held, however, that the standard for an evidentiary hearing is whether the prisoner has made specific factual allegations, which if true, state a claim on which relief can be granted. United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984), cert. denied, 470 U.S. 1058

(1985).  Mere conclusory statements are insufficient to require an evidentiary hearing.  <u>Id</u>. at 721.  The allegations of the prisoner need not be accepted as true to the extent they are contradicted by the record in the case.  <u>United States v. Quan</u>, 789 F.2d 711, 715 (9th Cir. 1986), <u>cert. denied</u>, 478 U.S. 1044 (1986); <u>Shraiar v. United States</u>, 736 F.2d 817, 818 (1st Cir. 1984).  In addition, no hearing is required where the movant's allegations, when viewed against the records, either fail to state a claim for relief or are so palpably incredible as to warrant summary dismissal.  <u>Shah v. United States</u>, 878 F.2d 1156, 1158 (9th Cir. 1989), <u>cert. denied</u>, 493 U.S. 869 (1989); <u>Shaflander</u>, 743 F.2d at 717; <u>Quan</u> 789 F.2d at 715.

In the instant case, the United States submits that an evidentiary hearing is not required because Myers has failed to make any specific factual allegations and the files and records conclusively show that Myers is not entitled to relief.  In addition, Myers' allegations consist of mere conclusory statements that fail to state a claim for relief.

## IV.  <u>CONCLUSION</u>

Myers has failed to make a <u>prima facie</u> case for any of his § 2255 claims as he has not articulated how counsels' performance was deficient and how counsels' alleged deficient representation prejudiced him.  The grounds in Myers' § 2255 motion are not based upon specific factual allegations and do not state a claim upon which relief can be granted.  For the

foregoing reasons, the United States respectfully requests that Myers' § 2255 motion be denied in its entirety without an evidentiary hearing.

DATED: May 28, 2010, at Honolulu, Hawaii.

Respectfully submitted,

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii


/s/Ronald G. Johnson
By _____
RONALD G. JOHNSON
Assistant U. S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 28, 2010, a true and correct copy of the foregoing was served via First Class U.S. Mail, Postage Prepaid on the following at their last known address:

**_VIA FIRST CLASS U.S. MAIL, POSTAGE PREPAID_**

Daniel Lynn Meyers 95490-022
FCI PHOENIX
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
37910 N 45TH AVE
PHOENIX, AZ 85086

/s/Kelly Muranaka
_____