IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DANIEL LYNN MYERS, | ) | CR. NO. 04-00363 SOM |
| | ) | CIV. NO. 10-00032 SOM/KSC |
| Petitioner, | ) | |
| | ) | ORDER DENYING MOTION TO |
| vs. | ) | VACATE, SET ASIDE, OR CORRECT |
| | ) | A SENTENCE BY A PERSON IN |
| UNITED STATES OF AMERICA, | ) | FEDERAL CUSTODY UNDER 28 |
| | ) | U.S.C. § 2255 |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING MOTION TO VACATE, SET ASIDE, OR
CORRECT A SENTENCE BY A PERSON IN FEDERAL
CUSTODY UNDER 28 U.S.C. § 2255

I.      INTRODUCTION.

        Daniel Lynn Myers is serving a 336-month term of
imprisonment for having conspired to distribute and to possess
with intent to distribute 50 grams or more of methamphetamine,
its salts, isomers, or salts of its isomers.  He now seeks to set
aside his sentence under 28 U.S.C. § 2255, arguing that his
attorneys, during trial and at sentencing, were ineffective.
This court denies the petition and declines to issue a
certificate of appealability.

II.     STANDARD OF REVIEW.

        Under § 2255, a court may grant relief to a federal
prisoner who challenges the imposition or length of his or her
incarceration on any of the following four grounds: (1) that the
sentence was imposed in violation of the Constitution or laws of
the United States; (2) that the court was without jurisdiction to

impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).

A § 2255 petition cannot be based on a claim that has already been disposed of by the underlying criminal judgment and ensuing appeal.  As the Ninth Circuit stated in Olney v. United States, 433 F.2d 161, 162 (9th Cir. 1970), "Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255."

Even when a § 2255 petitioner has not raised an alleged error at trial or on direct appeal, the petitioner is procedurally barred from raising an issue in a § 2255 petition if it could have been raised earlier, unless the petitioner can demonstrate both "cause" for the delay and "prejudice" resulting from the alleged error.  As the Court said in United States v. Frady, 456 U.S. 152, 167-68 (1982), "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  Id.; accord Davis v. United States, 411 U.S. 233, 242 (1973).  To show "actual prejudice," a § 2255 petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his

*actual* and substantial disadvantage, infecting his entire trial
with error of constitutional dimensions." <u>Frady</u>, 456 U.S. at
170.

A judge may dismiss a § 2255 petition if "it plainly
appears from the motion, any attached exhibits, and the record of
prior proceedings that the moving party is not entitled to
relief." Rule 4(b), Section 2255 Rules. A court need not hold
an evidentiary hearing if the allegations are "palpably
incredible" or "patently frivolous" or if the issues can be
conclusively decided on the basis of the evidence in the record.
<u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 76 (1977); <u>see also</u>
<u>United States v. Mejia-Mesa</u>, 153 F.3d 925, 929 (9th Cir. 1998)
(noting that a "district court has discretion to deny an
evidentiary hearing on a § 2255 claim where the files and records
conclusively show that the movant is not entitled to relief").

III.     <u>BACKGROUND.</u>

Myers and Scott Stadnisky were charged with having
conspired, between August 2003 and September 11, 2004, to
distribute or possess with intent to distribute 50 grams or more
of methamphetamine. Superseding Indictment, Docket No. 65 (Sept.
1, 2005).

At the time the Superseding Indictment issued, Myers
was serving a state sentence in California. Presentence
Investigation Report ¶ 3. Myers was brought to federal court

pursuant to a Writ of Habeas Corpus Ad Prosequendum.   Id. ¶ 4.

On December 6, 2005, Myers filed a motion to suppress the evidence that the police had seized, pursuant to a search warrant, during a search of his house on June 30, 2004.  Myers argued that the police had lacked probable cause to search his residence, house, and person, and that any property seized from that search had to be suppressed.  This court denied the motion to suppress, concluding that probable cause supported the warrant application.  See Order Denying Defendant Daniel Lynn Myers's Motion to Suppress, Docket No. 104 (Jan. 12, 2006).

Stadnisky and Myers went to trial.  During trial, the Government put on many witnesses, including narcotics trafficking and forensic analysis experts and Special Agent Jesse Fourmy from the DEA.  William Clifford, Myers's alleged co-conspirator, had earlier pled guilty to two counts of conspiracy.  He testified for the Government, stating that Myers had been his main methamphetamine supplier.  Clifford had acted as a Government informant on other matters, and both sides questioned him at trial about his previous dealings and prior relationship with law enforcement.

After a two-week trial, the jury found Stadnisky and Myers guilty.  See Jury Verdict, Docket No. 145 (Feb. 17, 2006).

Myers's trial counsel then moved to withdraw as counsel.  See Motion to Withdraw as Counsel, Docket No. 194 (Oct.

20, 2006).  This court granted the motion and appointed new counsel.

On May 4, 2007, Myers filed a Notice of Appeal.  On

Neither the Government nor Myers objected to any portion of the Presentence Investigation Report.  This court sentenced Myers to 336 months in prison and 5 years of supervised release.  Judgment was entered on April 24, 2007.

On May 4, 2007, Myers filed a Notice of Appeal.  On appeal, Myers argued that this court should have granted his motion to suppress the evidence obtained from the search of his house.  United States v. Stadnisky, 309 F. App'x 185, 188 (9th Cir. 2009).  Myers also argued that the prosecutor, at trial, had "vouched for the truthfulness of the government's main witness, William Clifford."  Id.

The Ninth Circuit affirmed Myers's conviction, holding that the record established that there was probable cause for the search warrant.  Id. at 188.  The Ninth Circuit also stated that the prosecutor had not inappropriately vouched for Clifford.  The Ninth Circuit noted that it is common for prosecutors to question witnesses about immunity, that Myers's defense counsel had attacked Clifford's credibility on cross-examination, and that the prosecutor had justifiably attempted to rehabilitate Clifford's testimony on redirect.  Id. at 189.

The § 2255 petition argues that Myers's counsel was ineffective in three ways.  First, Myers says, his trial counsel

5

was ineffective in having failed to file pretrial motions and to
object to "prejudicial effects." Motion at 5. Second, Myers
says, the prosecutor engaged in prosecutorial misconduct in
opening statements, and defense counsel was ineffective in having
failed to object to those statements. Id. at 6. Third, Myers
argues, defense counsel was ineffective at sentencing in having
failed to "address the USSG 5G1.3 sentencing factors." Id. at 7.
In a Reply memorandum, Myers belatedly identifies a motion to
sever his trial from Stadnisky's as a pretrial motion his counsel
should have brought.

This court finds no merit in any of Myers's
contentions. This court also declines to hold an evidentiary
hearing on Myers's claims, as the issues can be conclusively
decided on the basis of the existing record.

IV.     ANALYSIS.

A.     Myers Does Not Show That His Trial Counsel
       Was Ineffective.

Myers claims that his trial counsel was ineffective
in failing to file pretrial motions such as a motion to sever
trials, failing to investigate Clifford, failing to argue that
Clifford was a Government agent, and failing to object to the
Assistant United States Attorney's alleged vouching for Clifford.
Myers does not meet his burden of proving that his counsel was
ineffective.

To prevail on an ineffective assistance of counsel

6

claim, a petitioner must show both that his counsel's performance
fell below an objective standard of reasonableness, and that the
deficiency in his counsel's performance prejudiced him.
Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).  There
is a "strong presumption" that counsel's conduct was reasonable.
Id. at 689.

        1.      Myers Does Not Show That His
                    Counsel Was Ineffective In Failing
                    to File Pretrial Motions Such As a
                    Motion To Sever His Trial.

Myers complains that his counsel should have filed
pretrial motions.  "A convicted defendant making a claim of
ineffective assistance must identify the acts or omissions of
counsel that are alleged not to have been the result of
reasonable professional judgment."  Matylinsky v. Budge, 577 F.3d
1083, 1091 (9th Cir. 2009) (quoting Strickland, 466 U.S. at 690).
The only specific pretrial motion Myers identifies as something
his counsel should have filed is a motion to sever his trial.
Myers's counsel says he was "unable to identify any other non-
frivolous issues upon which to premise additional pretrial
motions."  Takahashi Decl. ¶ 5, attached to Government's
Response.  Myers does not show that his counsel was ineffective
with respect to any pretrial motion.

Arguments raised for the first time in a § 2255
petition are procedurally barred, unless a petitioner can show
cause for the delay and prejudice.  See Frady, 456 U.S. at 170

(noting that a § 2255 petitioner shows actual prejudice when the errors at his trial worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions).  This court assumes for purposes of this discussion that Myers is raising the pretrial motion issue for the first time in this petition because, as a layperson, he was reasonably relying on his counsel to identify such motions. This is a sufficient reason for delay.  However, Myers's argument is lacking in the actual prejudice prong.

Myers faces a difficult burden in arguing that the trials should have been severed.  Rule 14(a) of the Federal Rules of Criminal Procedure 14(a) provides, "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Joinder is "the rule rather than the exception."  United States v. Armstrong, 621 F.2d 951, 954 (9th Cir. 1980).  Accordingly, "Rule 14 sets a high standard for a showing of prejudice."  United States v. Vasquez-Velasco, 15 F.3d 833, 845 (9th Cir. 1994).  A defendant must show that a joint trial is "so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial."  United States v. Patterson, 819 F.2d 1495, 1501 (9th Cir. 1987) (quotations omitted); United States v. Decoud,

456 F.3d 996, 1008 (9th Cir. 2006); see also Armstrong, 621 F.2d
at 954 (stating that the burden is on the defendant "to show that
joinder was so manifestly prejudicial that it outweighed the
dominant concern with judicial economy and compelled exercise of
the court's discretion to sever"). "Co-defendants jointly
charged are, prima facie, to be jointly tried." United States v.
Mariscal, 939 F.2d 884, 885 (9th Cir. 1991) (quotations omitted).
Whether to sever a trial of a defendant is within the discretion
of the court. Id. at 886.

Myers claims that Stadnisky's actions in furtherance of
the alleged conspiracy occurred at a different time than Myers's
alleged acts in furtherance of the conspiracy. As he puts it,
"Since [Myers's] part of the conspiracy allegedly took place
prior to [Myers's] co-defendant's participation, and the
petitioner was in fact in a California State prison when his Co-
defendant allegedly conspired with the government," the evidence
at the joint trial of Myers and Stadnisky made it appear that
Myers was involved in a larger conspiracy than was actually the
case. Reply at 8.

Contrary to what Myers argues, the record indicates
that Stadnisky and Myers acted together in conspiring to
distribute drugs, even if some actions by each were taken without
the other. Myers's argument that he was prejudiced because they
were not involved in the same conspiracy fails.

9

Evidence was presented at trial showing that Myers supplied Clifford with methamphetamine, while Stadnisky supplied Myers.  See Transcript of Proceedings at 22, 42-44, 47, Docket No. 211.  When Myers was arrested on June 30, 2004, Clifford sought out Stadnisky as a new supplier.  Id.  Stadnisky was arrested on September 22, 2004, following the seizure of a parcel he had sent to Clifford.  Presentence Investigation Report ¶ 14. While Myers happened to be in jail before Stadnisky, and presumably did not participate in any drug activities for the three months that Stadnisky was still free, they were both charged with having conspired to distribute methamphetamine that ended up in Clifford's hands for some period between August 2003 and September 2004.  Superseding Indictment.

The evidence overwhelmingly showed that Stadnisky and Myers acted in concert up to June 2004.  Clifford testified that, in 2003, Myers was shipping methamphetamine to Hawaii for Clifford to sell.  Transcript of Proceedings at 12, 18-19, Docket No. 211.  The trial evidence included airbill receipts indicating shipments to and from Myers's home, a digital scale, and packaging materials, among other things.  See id. at 23-30 (Clifford explaining DHL express receipts of parcels sent from Myers to Clifford).  Clifford testified, "My drug source from [sic] June, July 2003 until June 2004 was strictly with Daniel Myers."  Clifford said that Myers was shipping methamphetamine

10

every two weeks.  Id. at 22-23.  Clifford also testified that
Stadnisky was Myers's supplier.  Id. at 43.

Being in jail for three months while Stadnisky
continued to distribute methamphetamine did not erase Myers's
conspiracy with Stadnisky.  Even if Stadnisky continued his drug
distribution without Myers, that did not mean that Stadnisky must
be said to have been in a much larger conspiracy that never
involved Myers.  A conspirator need not have been involved in
every act at every instant the conspiracy existed.  Given the
agreement Myers and Stadnisky had to distribute drugs, Myers does
not show prejudice in having been tried with Stadnisky.  Myers
does not explain how, even if he had been tried separately, the
outcome of the proceedings would have been different.
Accordingly, Myers does not show that he was prejudiced by his
counsel's failure to move to sever the trials.

> 2.     Myers Does Not Show That His
>        Counsel Was Ineffective In Failing
>        to Investigate and Interview
>        Clifford, or in Failing to Argue
>        that Clifford Was a Government
>        Agent.

Myers also argues that his counsel was ineffective by
failing to investigate and interview Clifford.  Memo at 4.  This
court is not persuaded.

Counsel need not undertake exhaustive witness
investigation to effectively assist a client.  The question is
not "what is prudent or appropriate, but only what is

constitutionally compelled." Burger v. Kemp, 483 U.S. 776, 794
(1987) (quoting United States v. Cronic, 466 U.S. 648, 665 n.38
(1984)).  While "counsel has a duty to make reasonable
investigations or to make a reasonable decision that makes
particular investigations unnecessary," an attorney's strategic
decisions "made after thorough investigation of law and facts
relevant to plausible options are virtually unchallengeable."
Strickland, 466 U.S. at 690.  "In any ineffectiveness case, a
particular decision not to investigate must be directly assessed
for reasonableness in all the circumstances, applying a heavy
measure of deference to counsel's judgments." Strickland, 466
U.S. at 691.

        Myers's counsel explains that he did not interview
Clifford because Clifford was cooperating with the Government,
and "cooperating witnesses have typically been well prepared by
the government and are not likely to change their story, and the
best strategy is to aggressively cross examine and confront the
witness."  Takahashi Decl. ¶ 8, attached to Government's
Response.  Myers's counsel warns that "talking to a cooperating
witness prior to trial will put the witness on notice regarding
your theory of the case and will serve to give the witness more
time to prepare their responses to your anticipated cross
examination." Id.  He states that in his view it is better to
vigorously cross-examine a cooperating witness.  Id.

Myers's counsel prepared for trial over a four-month period, consulting with Myers, reviewing discovery materials, and drafting cross-examination questions and closing argument.  Id. ¶ 7.  Counsel's strategic trial decision does not reflect ineffectiveness.

Even if Myers could prove that his counsel's decision not to interview Clifford was unreasonable, Myers has not shown resulting prejudice.  Myers does not, for instance, hypothesize what his counsel might have gained that would have helped Myers such that the trial would have ended differently.  Strickland, 466 U.S. at 694.

Finally, Myers says that Clifford "was a government agent" with whom Myers could not have conspired.  Myers thus posits that he should not have been found guilty of having conspired with Clifford, and faults his trial counsel for having failed to investigate and present this fact at trial.  The problem with this argument is that Clifford was not acting as a Government agent.  Clifford had been an informant at one time, but was fired from that position in 2002 before the start of the period in which he is alleged to have conspired with Myers and Stadnisky.  See Transcript of Proceedings at 88, Docket No. 210 (Agent Fourmy testifying that the agreement was terminated in September 2002).

Clifford's prior status as a Government informant was

in fact presented to the jury.  Stadnisky's attorney asked how
Clifford had become an informant, and repeatedly implied that
Clifford had lied to law enforcement in the hope of receiving a
better sentence.  Transcript of Proceedings at 115-117, Docket
No. 211 (Feb. 9, 2007).  Stadnisky's attorney asked Clifford,
"You had learned earlier that, if you cooperate, good things
happen, right?"  Id. at 177.  He asked, "[T]his time you thought
you were going to get caught and you were trying to buy your way
out again, correct?"  Id.  Myers's counsel quizzed Clifford about
the immunity letter he had received from the Government.
Transcript of Proceedings at 8-10, Docket No. 212 (Feb. 9, 2007).
In sum, Myers does not show that his counsel was ineffective in
this regard.

> 3.   Myers Does Not Show That His
>      Counsel Was Ineffective In Failing
>      to Object to Alleged Governmental
>      Vouching for Clifford.

Myers argues next that his counsel should have objected
to the Government's "vouching" for Clifford that occurred during
"opening statements by the prosecutor and [throughout] the entire
transcript of the trial."  Motion at 6; Memo at 4.  Myers does
not point to any particular statement in the record constituting
such vouching.  The Ninth Circuit has already held that the
prosecutor did not engage in any inappropriate vouching.  United
States v. Stadnisky, 309 F. App'x 185, 188-89 (9th Cir. 2009).
Having raised the issue unsuccessfully on appeal, Myers may not

14

relitigate it as part of his § 2255 petition.

B.    Myers Does Not Show That Sentencing Counsel
      Was Ineffective.

Myers claims next that his sentencing counsel was
ineffective.  Myers says that his sentencing counsel failed to
address United States Sentencing Guidelines § 5G1.3 factors.
Myers alleges that his sentencing counsel should have urged this
court to run his federal sentence concurrently to an undischarged
California state court sentence.  Myers says that at the time of
trial, he was still serving that California state sentence.
However, as Myers was not serving any state prison sentence at
the time he was sentenced by this court, § 5G1.3 is inapplicable.

Under § 5G1.3:

(a)  If the instant offense was committed
while the defendant was serving a term of
imprisonment (including work release,
furlough, or escape status) or after
sentencing for, but before commencing service
of, such term of imprisonment, the sentence
for the instant offense shall be imposed to
run consecutively to the undischarged term of
imprisonment.

(b) If subsection (a) does not apply, and a
term of imprisonment resulted from another
offense that is relevant conduct to the
instant offense of conviction under the
provisions of subsections (a)(1), (a)(2), or
(a)(3) of § 1B1.3 (Relevant Conduct) and that
was the basis for an increase in the offense
level for the instant offense under Chapter
Two (Offense Conduct) or Chapter Three
(Adjustments), the sentence for the instant
offense shall be imposed as follows:

(1) the court shall adjust the
sentence for any period of
imprisonment already served on the
undischarged term of imprisonment
if the court determines that such
period of imprisonment will not be
credited to the federal sentence by
the Bureau of Prisons; and

(2) the sentence for the
instant offense shall be
imposed to run
concurrently to the
remainder of the
undischarged term of
imprisonment.

(c) (Policy Statement) In any other case
involving an undischarged term of
imprisonment, the sentence for the instant
offense may be imposed to run concurrently,
partially concurrently, or consecutively to
the prior undischarged term of imprisonment
to achieve a reasonable punishment for the
instant offense.

On October 22, 2004, Myers was convicted and sentenced
for the offense of possessing a controlled substance for sale in
Alameda County Superior Court, California.   Presentence
Investigation Report ¶ 50.   On January 31, 2006, Myers was placed
on parole in that state case.   Id.   This court sentenced him on
April 19, 2007.

Myers provides no evidence that, at the time of his
federal sentencing, he had any undischarged state term of
imprisonment.   The Presentence Investigation Report, to which
Myers did not object, noted the date he was paroled on the State

of California charge.  This court was thus well aware of Myers's
state court case but had no reason to consider § 5G1.3, which
applies only when there is an undischarged term of imprisonment
for another offense.  See United States v. Turnipseed, 159 F.3d
383 (9th Cir. 1998) ("If a defendant has been released from state
prison after having served the term imposed, no term of
imprisonment remains with which the federal sentence can 'run
concurrently.'").

        Myers appears to be arguing that, even though he was on
state court parole by the time this court sentenced him, this
court should have taken his state court prison sentence into
account and correspondingly reduced his federal sentence.  Myers
was in a federal facility pursuant to a writ before this court
sentenced him and was not deemed to have been serving federal
time while at the federal facility on a writ.  The state court
prison sentence appears to have involved drugs that were not
taken into account in his federal sentence.  According to the
Presentence Investigation Report, Myers was convicted in
California state court of the possession or purchase of narcotics
or controlled substances in 2004, following a search of his
California home by local law enforcement on June 30, 2004.  The
drugs that were the basis of guideline calculations for his
federal sentence were allegedly shipped between September 19,
2003 and June 3, 2004.  Presentence Investigation Report ¶¶ 9,

33.  Although materials seized during the search on June 30, 2004, were used in the federal trial, Myers was not charged in federal court with possessing or purchasing the seized drugs, and the seized drug amount did not affect his federal sentence at all.  He thus could not be said to have been imprisoned twice for possessing or purchasing the same drugs.

To the extent Myers argues that, had it not been for his counsel's ineffectiveness, he would have received credit for time he had served on his state sentence pursuant to 18 U.S.C. § 3585(b), that argument fails.  This court lacks authority to compute or grant credit for time served.  United States v. Peters, 470 F.3d 907, 909 (9th Cir. 2006).  "Rather, the prerogative to grant credits in the first instance rests with the Attorney General, acting through the Bureau of Prisons."  Id.  As this court lacked authority to compute the time served, Myers's counsel was not ineffective in failing to ask this court to act in that regard.

V.      CERTIFICATE OF APPEALABILITY.

A petitioner must obtain a certificate of appealability before pursuing any appeal from a final order in a § 2255 proceeding.  See 28 U.S.C. § 2253(c)(1)(B).

A court should issue a certificate of appealability only when the appeal presents a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The

18

Supreme Court has stated:

> Where a district court has rejected the
> constitutional claims on the merits, the
> showing required to satisfy § 2253(c) is
> straightforward:  The petitioner must
> demonstrate that reasonable jurists would
> find the district court's assessment of the
> constitutional claims debatable or wrong.
> The issue becomes somewhat more complicated
> where, as here, the district court dismisses
> the petition based on procedural grounds.  We
> hold as follows:  When the district court
> denies a habeas petition on procedural
> grounds without reaching the prisoner's
> underlying constitutional claim, a
> [Certificate of Appealability] should issue
> when the prisoner shows, at least, that
> jurists of reason would find it debatable
> whether the petition states a valid claim of
> the denial of a constitutional right and that
> jurists of reason would find it debatable
> whether the district court was correct in its
> procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000).  As this court finds
that reasonable jurists would not debate this court's ruling on
Myers's petition, the court declines to issue a certificate of
appealability.

VI.      CONCLUSION.

        The court denies Myers's petition for § 2255 relief
without an evidentiary hearing, as the record conclusively shows
that Myers is not entitled to relief.  Additionally, the court
declines to issue a certificate of appealability.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii June 21, 2010



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Daniel Lynn Myers v. United States of America, 04cr363; 10cv00032; ORDER
DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN
FEDERAL CUSTODY UNDER 28 U.S.C. § 2255