IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-00363 SOM (04) |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| | ) | |
| vs. | ) | |
| | ) | |
| DANIEL LYNN MYERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**I.        INTRODUCTION AND BACKGROUND.**

In 2007, this court sentenced Defendant Daniel Lynn Myers to 336 months of imprisonment after a jury found him guilty of a drug crime.  The crime involved at least 14 pounds of methamphetamine.  *See* Judgment in a Criminal Case, ECF No. 239; Presentence Investigation Report ¶ 33; Transcript of [Sentencing] Proceeding (Apr. 19, 2007) at 4, ECF No. 255, PageID # 1860 (adopting Presentence Investigation Report).  Myers now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

The primary basis for his motion is the COVID-19 pandemic.  He contends that his relevant underlying conditions (age 61, asthma, heart problems, obesity, prior cancers) make him vulnerable to severe complications if he contracts COVID-19.  *See* ECF No. 360-1.  There is no dispute that he has the medical conditions he identifies.  *See* ECF No. 364, PageID #s 2814, 2815,

2841, 2843.

Myers is housed at FCI Lompoc in California and has a projected release date of February 3, 2030.  *See* ECF No. 360-3, PageID # 2786; https://www.bop.gov/inmateloc/ (input Register Number 95490-022) (last visited August 12, 2020).  There are 1060 inmates at FCI Lompoc.  *See* https://www.bop.gov/locations/institutions/lof/ (last visited August 12, 2020).  As of the morning of August 13, 2020, 801 of those inmates had contracted COVID-19, with 798 of them having recovered, two having died, and 1 still having an active case.  *See* https://www.bop.gov/coronavirus/ (last visited August 13, 2020).  Eighteen staff members at FCI Lompoc have contracted COVID-19, with 16 of them having recovered and 2 still having active cases.  *Id.*

Myers has previously contracted and recovered from COVID-19 at FCI Lompoc.  *See* ECF No. 364, PageID # 2814, 2816, and 2879.  He had a low "Peak expiratory flow," which measures how fast a person can exhale, but no other reported symptoms.  *See id.*, PageID #s 2814-17.

Now, more than three months after Myers was diagnosed with COVID-19, this court cannot tell whether he is likely to suffer further complications or to become reinfected, or whether he might have some form of immunity from the virus such that it does not pose an immediate threat to him.  This court balances

all of these circumstances, including the significant time that
remains on Myers's sentence, and concludes that Myers has not
established extraordinary and compelling reasons that warrant a
reduction in his sentence.

**II.      ANALYSIS.**

Myers's compassionate release request is governed by 18
U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the
> defendant after the defendant has fully
> exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse
> of 30 days from the receipt of such a request
> by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of
> probation or supervised release with or
> without conditions that does not exceed the
> unserved portion of the original term of
> imprisonment), after considering the factors
> set forth in section 3553(a) to the extent
> that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons
> warrant such a reduction . . . .
>
> and that such a reduction is consistent with
> applicable policy statements issued by the
> Sentencing Commission.

In other words, for the court to exercise its authority under
§ 3582(c)(1)(A), it must (1) find that the defendant exhausted
his administrative remedies or that 30 days have passed since he
filed an administrative compassionate relief request; (2) also
find, after considering the factors set forth in section 3553(a),
that extraordinary and compelling reasons warrant a sentence

reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements. *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

### A.   Myers has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).

Myers submitted an administrative compassionate release request to the warden of his prison more than 30 days before filing this motion. *See* ECF No. 360-5, PageID # 2790 (Apr. 4, 2020 request for compassionate release due to asthma, cancer, and heart disease). He has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A). The Government is not contesting Myers's satisfaction of the exhaustion requirement. ECF No. 367, PageID # 3131 ("Myers meets this exhaustion requirement.").

### B.   Myers has not demonstrated that extraordinary and compelling circumstances justify his early release.

This court therefore turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. This court has stated that it reads § 3582(c)(1)(A) as allowing this court considerable discretion, notwithstanding the absence

of an amended policy statement from the Sentencing Commission reflecting the discretion now given to courts under that statute. *See United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).

The CDC currently lists the following conditions as creating an increased risk of a severe illness from COVID-19:

*Cancer

*Chronic kidney disease

*COPD (chronic obstructive pulmonary disease)

*Immunocompromised state (weakened immune system) from solid organ transplant

*Obesity (body mass index [BMI] of 30 or higher)

*Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies

*Sickle cell disease

*Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited August 12, 2020).

The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

*Asthma (moderate-to-severe)

*Cerebrovascular disease (affects blood vessels and blood supply to the brain)

*Cystic fibrosis

*Hypertension or high blood pressure

*Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines

*Neurologic conditions, such as dementia

*Liver disease

*Pregnancy

*Pulmonary fibrosis (having damaged or scarred lung tissues)

*Smoking

*Thalassemia (a type of blood disorder)

*Type 1 diabetes mellitus

*Id.*

Under the CDC's guidance, Myers's underlying conditions (age 61, asthma, heart problems, obesity, prior cancers) increase his risk of a severe illness if he contracts COVID-19.  But that does not end the analysis.

Myers is housed at FCI Lompoc.  There is no dispute that, early in the COVID-19 pandemic, the virus spread rapidly through FCI Lompoc, with 801 inmates and 18 staff members testing positive and two inmates dying.  However, the number of active cases is now considerably reduced.  As of today, there is only 1 positive inmate test and 2 positive staff tests.  *See*

6

https://www.bop.gov/coronavirus/ (last visited August 13, 2020).
Whether that reduction is because many inmates now have immunity,
because the facility is doing better at controlling the spread,
or (of greater concern) because the facility is failing to detect
new cases, this court at this point has a record that is less
serious than it would have been earlier.  The court nevertheless
considers the serious history at FCI Lompoc and the risk that
Myers might be exposed to COVID-19 and suffer serious
complications.

There is some evidence in the record that suggests that
risk might be mitigated.  Most notably, Myers tested positive for
COVID-19 on May 5, 2020, more than three months ago.  Other than
a low "Peak expiratory flow," he appears not to have exhibited
any symptoms.  That raises two issues.

First, if he did not develop complications during his
May infection, it might be that he will not likely develop
complications even if reinfected.  There is no way for this court
to know whether Myers's test was a false positive, but, if the
test was accurate, it appears that Myers may have survived the
virus without developing serious complications.

Second, based on the present record, this court cannot
conclude that there is a substantial risk that Myers will be
reinfected.  Individuals infected by certain other viruses may
have at least some immunity against future infection, although

7

the strength and length of that immunity has not been
established.  Pointing to a New York Times article, Myers asserts
that there is some evidence that COVID-19 is different, as a "new
study suggests that the antibodies a person creates to combat
[COVID]-19 may last only two or three months, which indicates
that a person who already had [COVID]-19 may eventually get re-
infected."  ECF No. 360-1, PageID # 2771 (citing Apoorva
Mandavilli, *You May Have Antibodies After Coronavirus Infection.
But Not for Long*, N.Y. Times, June 18, 2020,
https://www.nytimes.com/2020/06/18/health/coronavirus-antibodies.
html (indicating that COVID-19 antibodies may only last 2 to 3
months) (last visited August 12, 2020)).

        However, more recent articles, including one by the
same author, have indicated that individuals infected with COVID-
19 are likely to remain immune even after their antibody count
drops.  These articles indicate that the body might retain
immunological memory that allows it to quickly produce new
antibodies to respond to a second infection.  Additionally, the
remaining antibodies might even be sufficient to knock off COVID-
19.  Some experts therefore posit that, at the very least, it is
highly unlikely that individuals will contract the coronavirus
twice.  "A decline in antibodies is normal after a few weeks, and
people are protected from the coronavirus in other ways."
Apoorva Mandavilli, *Can You Get COVID-19 Again? It's Very*

*Unlikely, Experts Say*, N.Y. Times, July 22, 2020,

https://www.nytimes.com/2020/07/22/health/covid-antibodies-herd-i

mmunity.html (last visited August 12, 2020); *see also* Martin

Finucane, *Here's What You Need To Know About Fading Coronavirus

Antibodies*, Boston Globe, July 23, 2020,

https://www.bostonglobe.com/2020/07/23/nation/heres-what-you-need

-know-about-fading-coronavirus-antibodies/; Derek Thompson, *How

Long Does COVID-19 Immunity Last?,* The Atlantic, July 20, 2020,

https://www.theatlantic.com/ideas/archive/

2020/07/could-covid-19-immunity-really-disappear-months/614377/

(last visiting August 12, 2020).

This court is acutely aware that no one completely

understands how the coronavirus operates.  In fact, the CDC

indicates that "more information is needed to know whether

similar immune protection will be observed for patients with

COVID-19."  https://www.cdc.gov/coronavirus/

2019-ncov/hcp/faq.html (last visited August 12, 2020).  This

court is in no position to make a definitive determination about

Myers's immunity, but the combination of his lack of

complications after testing positive and the possibility that he

may have some form of immunity cannot be entirely ignored in any

evaluation of whether there are extraordinary and compelling

reasons warranting a reduction in his sentence.

In addition to examining Myers' medical conditions and

potential immunity to COVID-19 in the course of determining
whether he has shown extraordinary and compelling reasons to
reduce his sentence, the court, pursuant to § 3582(c)(1)(A),
considers the factors set forth in § 3553(a).  That section
requires the court to impose a "sentence sufficient, but not
greater than necessary, to comply with the purposes set forth in
paragraph (2)" below:

>     (1) the nature and circumstances of the
>     offense and the history and characteristics
>     of the defendant;
>
>     (2) the need for the sentence imposed--
>         (A) to reflect the seriousness of the
>     offense, to promote respect for the law, and
>     to provide just punishment for the offense;
>         (B) to afford adequate deterrence to
>     criminal conduct;
>         (C) to protect the public from further
>     crimes of the defendant; and
>         (D) to provide the defendant with needed
>     educational or vocational training, medical
>     care, or other correctional treatment in the
>     most effective manner;
>
>     (3) the kinds of sentences available;
>
>     (4) the kinds of sentence and the sentencing
>     range established for--
>         (A) the applicable category of offense
>     committed by the applicable category of
>     defendant as set forth in the guidelines--
>     (i) issued by the Sentencing Commission
>     pursuant to section 994(a)(1) of title 28,
>     United States Code, subject to any amendments
>     made to such guidelines by act of Congress
>     (regardless of whether such amendments have
>     yet to be incorporated by the Sentencing
>     Commission into amendments issued under
>     section 994(p) of title 28); and
>     (ii) that, except as provided in section
>     3742(g), are in effect on the date the

defendant is sentenced; or
        (B) in the case of a violation of
probation or supervised release, the
applicable guidelines or policy statements
issued by the Sentencing Commission pursuant
to section 994(a)(3) of title 28, United
States Code, taking into account any
amendments made to such guidelines or policy
statements by act of Congress (regardless of
whether such amendments have yet to be
incorporated by the Sentencing Commission
into amendments issued under section 994(p)
of title 28);

(5) any pertinent policy statement--
        (A) issued by the Sentencing Commission
pursuant to section 994(a)(2) of title 28,
United States Code, subject to any amendments
made to such policy statement by act of
Congress (regardless of whether such
amendments have yet to be incorporated by the
Sentencing Commission into amendments issued
under section 994(p) of title 28); and
        (B) that, except as provided in section
3742(g), is in effect on the date the
defendant is sentenced.

(6) the need to avoid unwarranted sentence
disparities among defendants with similar
records who have been found guilty of similar
conduct; and

(7) the need to provide restitution to any
victims of the offense.

18 U.S.C. § 3553(a).

        The record indicates that Myers has served a

substantial prison sentence, but still has 9½ years left until

his projected release date.  Myers was responsible for drug

crimes involving pounds of methamphetamine.  He was determined to

be a career offender, with previous convictions involving

violence, including manslaughter (sentenced 11/17/87), battery on

11

a police officer (sentenced 2/11/97), and battery and
resisting/obstructing an officer (sentenced 3/13/96).  *See*
Pretrial Investigation Report at 13-14.  Myers also had two prior
drug convictions (sentenced 3/13/96 and 10/22/2004).  *See id.*
While these convictions are by now old, Myers has by now been in
custody for a while, and it is difficult to say whether he would
or would not have committed more crimes had he not been in
prison.  *See* Judgment in a Criminal Case, ECF No. 239.  Myers's
lengthy criminal history weighs against compassionate release at
this time, as a risk of recidivism remains despite Myers's age.

        The record does include encouraging indications about
Myers's recent commitment to his rehabilitation.  His last
disciplinary sanction was for refusing to obey an order in June
2015, more than five years ago.  *See* ECF No. 371-1, PageID #3416.
While Myers had disciplinary sanctions in 2005 and 2006 for
assaults, *see id.*, PageID # 3417, the lack of any recent
discipline involving violence is encouraging.  Myers has also
completed educational courses, suggesting an interest in
rehabilitating himself.  *See* ECF No. 360-8, PageID # 2800.

        Under § 3582(c)(1)(A), only extraordinary and
compelling reasons can justify a reduction in an inmate's
sentence.  Having balanced the seriousness of Myers's crime, the
amount of time remaining on his sentence, his negative and
positive behavior while incarcerated, his criminal history and

the potential for recidivism, the totality of the medical information he has submitted, and the potential of re-exposure to COVID-19 at his prison, this court determines that the reasons raised by Myers, while important, do not at this point rise to the level of being extraordinary and compelling reasons warranting release at this time.  In so finding, this court states that it is not totally closed to the idea that Myers may in the future convince this court that he should be released early, rather than having to serve all of the extremely long sentence this court imposed more than a decade ago.  The court recognizes that Myers is aging with significant medical conditions, and that he may be able to present a longer record of good conduct while in prison.  In short, a future motion may yield a different result.

**III.      CONCLUSION.**

        Myers's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

        It is so ordered.

        DATED: Honolulu, Hawaii, August 13, 2020.



                              /s/ Susan Oki Mollway
                              Susan Oki Mollway
                              United States District Judge

*United States v. Myers*, Cr. No. 04-00363 SOM (04); ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE